JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Bernard O'Neal ("O'Neal"), appeals his convictions and sentences for felonious assault, kidnapping, and gross sexual imposition. Finding some merit to this appeal, we affirm in part and reverse in part.
 {¶ 2} In April 2003, O'Neal was indicted for attempted murder, felonious assault, two counts of kidnapping containing a sexual motivation specification, and two counts of gross sexual imposition. The matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} On the evening of March 22, 2003, T.F., the eleven-year-old victim ("victim") was at home with her five-year-old sister and her mother, when O'Neal and his girlfriend, Stephanie Jones ("Jones"), stopped to visit. Jones and the victim's mother had been close friends, and the victim and her family had previously met O'Neal through Jones.
 {¶ 4} The adults decided to drive to the video store. Because O'Neal and Jones planned to drive directly home from the video store, the victim's mother drove her own car. Jones asked O'Neal to drive her car while she rode with the victim's mother. The victim and her sister rode with O'Neal in Jones' car.
 {¶ 5} The victim testified that while sitting in the front passenger seat, O'Neal placed his right hand on her upper left thigh. This made her feel "bad," so she removed his hand O'Neal then grabbed her hand but she quickly pulled her hand away. Ultimately, O'Neal again grabbed her hand and placed it on his "private part." Although the victim testified that what O'Neal did was "nasty," she indicated that she was too scared to tell him to stop. Upon reaching the video store, the victim told her younger sister not to tell anyone. The victim said nothing to her mother about the incident and avoided O'Neal. She rode home silently in her mother's car.
 {¶ 6} Two days later, the victim wrote a "note" describing the incident and gave it to Carla Holbert, her twenty-year-old neighbor and friend. The victim's note indicated that O'Neal had touched her inappropriately. Although the victim stated that Holbert placed the note in her purse after reading it, Holbert testified that she ripped the note into pieces because the victim asked her not to show it to anyone.
 {¶ 7} After giving the note to Holbert, the victim returned home and called Jones' cell phone to locate her mother. Although her mother answered, the victim did not recognize her voice and asked if O'Neal was present. Her mother immediately identified herself and asked the victim why she was asking about O'Neal. Upon further questioning from her mother, the victim told her that O'Neal had touched her. The mother relayed the information to Jones and returned home.
 {¶ 8} At home, she questioned both of her daughters separately and they each told the same story. After discovering that the victim confided in Holbert, the mother went to speak with her. Holbert told her about the contents of the note and explained that she had discarded it because the victim did not want anyone to see it. Holbert indicated that although the victim was afraid to reveal what happened, she asked Holbert to help her tell her mother.
 {¶ 9} The next day, the mother and the victim went to Cleveland police to report the incident. The police needed more information concerning O'Neal. At that time, the mother knew only O'Neal's first name, so the police instructed her to return after she had more information.
 {¶ 10} The mother called Jones to obtain more information regarding O'Neal. Jones only provided O'Neal's last name. However, she called back with O'Neal on the line, and he denied ever touching the victim.
 {¶ 11} Less than a week later, the mother informed her brother, J.F., of the incident involving O'Neal. She further complained about the failure of police to respond to the incident and Jones' failure to provide additional information. In response, J.F. called Jones' house and left a message for her to call him back. The following day, he drove to Jones' house after speaking with both Jones and O'Neal on the phone. J.F. testified that he drove to the house along with his two nieces because he assumed O'Neal would accompany them to the police station to resolve the matter.
 {¶ 12} J.F. testified that upon reaching Jones' house, he instructed his nieces to stay in the car while he spoke with O'Neal. He knocked on the door and waited for O'Neal. J.F. testified that after O'Neal stated that he was not going to the police station and accused J.F. of "messing with his life," O'Neal turned around to walk back into the house. Suddenly, he turned around and "swiped" J.F. with a four-inch steak knife. J.F. lost his balance and fell to the ground. J.F. stated that O'Neal poked him repeatedly with the knife, and after the two of them "tussled" on the ground, O'Neal started choking him and threatened to kill him. O'Neal continued to threaten him until Jones pulled into the driveway. The two men stopped fighting and Jones called the police.
 {¶ 13} Cleveland police placed J.F. in a police vehicle, while O'Neal was treated by EMS for a dislocated arm. After interviewing both men, the victim, and her sister, the police arrested O'Neal. They collected J.F.'s bloody clothing and the knife used in the fight and photographed J.F.'s injuries. Det. James McPike testified that he investigated the allegations of sexual misconduct and presented his findings to the grand jury.
 {¶ 14} Jones testified in O'Neal's defense. She stated that O'Neal drove her car to the video store with the victim sitting in the front and her sister in the back, while she rode with the victim's mother in the other car. On cross-examination, she admitted that O'Neal was holding the knife when she arrived home on the day of the second incident.
 {¶ 15} The jury found O'Neal not guilty of attempted murder but guilty of all the remaining charges. At the sentencing hearing, the trial court imposed four years in prison for each of the kidnapping and gross sexual imposition counts, with all counts to run concurrently, and four years for felonious assault, to run consecutively with the other counts, for a total of eight years.
 {¶ 16} O'Neal appeals, raising five assignments of error, as well as three additional assignments of error in his pro se brief. We will address these assignments of error together and out of order where appropriate.
 Sufficiency of the Evidence {¶ 17} In his first and second assignments of error, O'Neal contends that the trial court erred by denying his Crim.R. 29 motion for acquittal because there was insufficient evidence presented as to the elements of kidnapping and gross sexual imposition. Additionally, O'Neal contends in his pro se brief that his conviction for felonious assault was not supported by sufficient evidence.
 {¶ 18} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 19} O'Neal was convicted of two counts of kidnapping under R.C. 2905.01(A)(2) and (A)(4), which provides:
"(A) No person, by force, threat, or deception, or, in thecase of a victim under the age of thirteen or mentallyincompetent, by any means, shall remove another from the placewhere the other person is found or restrain the liberty of theother person, for any of the following purposes:
* * *
(2) To facilitate the commission of any felony or flightthereafter;
* * *
(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim'swill[.]"
 {¶ 20} In the context of the statute, "sexual activity" includes "sexual contact," which is defined as:
"[A]ny touching of an erogenous zone of another, includingwithout limitation the thigh, genitals, buttock, pubic region,or, if the person is a female, a breast, for the purpose ofsexually arousing or gratifying either person."
 {¶ 21} O'Neal contends that the State failed to prove that he "restrained" the victim's liberty by giving her a ride, especially since the victim voluntarily entered the car to ride with him to the video store. In response, the State argues that O'Neal's acts of grabbing the victim's hand and placing his hand on her thigh constituted a "restraint" and justified one count of kidnapping. Further, the State contends that his subsequent act of placing the victim's hand on his own genitals supported the second count of kidnapping. We disagree.
 {¶ 22} The evidence unequivocally demonstrated that the victim entered the car with the intention of allowing O'Neal to drive her to the video store. Although O'Neal took advantage of the situation, we fail to see how his conduct amounts to two counts of kidnapping. Here, there was no evidence presented that O'Neal restrained the victim for the purpose of touching her or committing some other felony. Rather, the only evidence presented of any alleged "restraint" was the actual touching, which constituted evidence supporting the gross sexual imposition charges. Thus, under the State's theory, every act of gross sexual imposition involving a minor would also constitute a kidnapping. We decline to make such a finding.
 {¶ 23} Furthermore, based on the evidence presented at trial, we are reluctant to find that O'Neal "restrained" the victim as required under R.C. 2905.01. This court has previously found that "to restrain" means "to limit one's freedom of movement in any fashion for any period of time." State v. Wingfield (Mar. 7, 1996), Cuyahoga App. No. 69229. The State failed to produce any evidence that O'Neal's acts of "touching" limited the victim's freedom of movement. To the contrary, the victim testified that she removed O'Neal's hand from her thigh and that she pulled her hand away from his grasp.
 {¶ 24} We further find the instant case distinguishable from this court's decision in State v. Murphy (July 30, 1998), Cuyahoga App. No. 71775. In Murphy, the issue was whether the facts supported a finding that the defendant removed the victim from the place where she was found for the purpose of engaging in sexual contact. Because the evidence demonstrated that Murphy took advantage of his close relationship with the victim's family to drive the victim to as many places as possible, this court found that it was reasonable for the jury to infer that Murphy offered such rides for the purpose of engaging in sexual contact. Unlike Murphy, there was no evidence that O'Neal offered the victim a ride as a means to engage in sexual contact. In fact, the victim got into Jones' car before O'Neal was even asked to drive.
 {¶ 25} Accordingly, the first assignment of error is well taken, and the conviction for kidnapping is vacated.[1]
 {¶ 26} As to O'Neal's contention that his convictions for gross sexual imposition and felonious assault are unsupported by the evidence, we disagree.
 {¶ 27} O'Neal was convicted of two counts of gross sexual imposition under R.C. 2907.05(A)(4), which prohibits any person from having sexual contact with a person less than thirteen years of age, regardless of whether the offender knows the age of the victim. Additionally, O'Neal was convicted of felonious assault under R.C. 2903.11(A)(2), which provides that "no person shall cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 28} In the instant case, the victim testified that O'Neal placed his hand on her upper thigh several times and that he subsequently grabbed her hand and placed it on his "private parts." Considering this testimony in the light most favorable to the State, we find that the trial court properly denied O'Neal's motion for acquittal on the charges of gross sexual imposition.
 {¶ 29} Likewise, sufficient evidence was presented as to the elements of felonious assault. J.F. testified that O'Neal attacked him and cut him several times with a knife. The child victim corroborated this testimony and the State produced photographs of J.F.'s wounds. Furthermore, Jones admitted on cross-examination that O'Neal was holding the knife when she encountered the two men fighting.
 {¶ 30} Accordingly, we overrule the second assignment of error and O'Neal's third pro se assignment of error.
 Manifest Weight of the Evidence {¶ 31} In his third assignment of error, O'Neal contends that his convictions for kidnapping and gross sexual imposition are against the manifest weight of the evidence.
 {¶ 32} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 33} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 34} Having found insufficient evidence to support a kidnapping conviction, we also find that the kidnapping conviction was against the manifest weight of the evidence. SeeState v. Mader (Aug. 30, 2001), Cuyahoga App. No. 78200 (recognizing that defendant's kidnapping conviction was against the manifest weight of the evidence because the restraint was completely incidental to the gross sexual imposition). However, upon review of the evidence presented at trial, this court cannot find that the jury clearly lost its way when it found O'Neal guilty of two counts of gross sexual imposition.
 {¶ 35} The victim testified that O'Neal touched her thigh several times and grabbed her hand and placed it on his "private parts." The mother testified that both her daughters reiterated the same version of the incident, despite being interviewed separately. Further, Holbert testified that the victim gave her a note describing the incident and asked Holbert to help her tell her mother. When questioned by the mother, Holbert confirmed what the victim had said.
 {¶ 36} O'Neal argues that the victim's testimony was not credible because it was contradicted by the State's other witnesses. Specifically, he contends that the victim and Holbert contradicted one another as to the destruction of the alleged note. Based on this contradiction, O'Neal argues that the jury obviously lost its way by believing the victim. This argument lacks merit.
 {¶ 37} At best, this is a minor inconsistency, which on its own does not render the victim's testimony inherently unreliable, but places her credibility at issue. See State v. Mattison
(1985), 23 Ohio App.3d 10. Further, the weight and credibility to be given to that testimony were matters for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Regardless of the existence of the note, the victim consistently described the pertinent details and the victim's sister corroborated the story. We cannot say that the jury lost its way simply because it chose to believe the victim despite some contradictory testimony regarding the destruction of the note.
 {¶ 38} Thus, the third assignment of error is overruled.
 Jury Instruction tc\11 "Jury Instruction {¶ 39} In his fourth assignment of error, O'Neal argues the trial court failed to instruct the jury on the essential elements of gross sexual imposition. However, O'Neal never objected to the jury instructions. "Failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." See, also, State v. Williford (1990),49 Ohio St.3d 247, 251.
 {¶ 40} O'Neal has failed to show that the jury instructions constituted plain error. In fact, we fail to find any error. In addressing O'Neal's argument, we must view the instructions in the context of the overall charge. State v. Price (1979),60 Ohio St.2d 136, 141; State v. Rice, Cuyahoga App. No. 82547, 2003-Ohio-6947; State v. Hairston, Cuyahoga App. No. 80054, 2003-Ohio-3640. O'Neal contends that the trial court failed to instruct the jury concerning "purpose." However, a thorough review of the record demonstrates that such an instruction was provided when the trial court defined "sexual contact" within the kidnapping instruction and incorporated it into the latter charge for gross sexual imposition.
 {¶ 41} Specifically, the trial court instructed the jury that to convict O'Neal of gross sexual imposition, it had to find that:
"the defendant had sexual contact with [the victim], not hisspouse, whose age at the time of said sexual contact was under 13years * * *."
 {¶ 42} The court further explained that "sexual contact" had been previously defined within the instruction for kidnapping and that the "same definitions apply herein." As noted above, the definition of "sexual contact" includes the requirement that such contact is "for the purpose of sexually gratifying either person." By giving this definition and having previously defined "purpose," the trial court adequately instructed the jury. SeeState v. Griffin, Cuyahoga App. No. 80499, 2002-Ohio-4288. Thus, O'Neal's fourth assignment of error is overruled.
 Consecutive Sentences {¶ 43} In his first pro se assignment of error, O'Neal argues that the trial court erred by imposing consecutive sentences. Specifically, he claims that the offenses did not warrant consecutive sentences, that the trial court failed to provide its reasons for its findings, and that the court misconstrued his prior offenses.
 {¶ 44} This court reviews a felony sentence de novo. R.C.2953.08. A sentence will not be disturbed on appeal unless the reviewing court finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. R.C. 2953.08(G)(2); State v. Hollander (2001),144 Ohio App.3d 565; State v. Rigo (June 21, 2001), Cuyahoga App. No. 78761. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 45} Pursuant to R.C. 2929.14(E)(4), the court may impose consecutive sentences for convictions of multiple offenses only after it makes three determinations: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) if the court also finds any of the following:
"(a) The offender committed the multiple offenses while theoffender was awaiting trial or sentencing, was under a sanctionimposed pursuant to section 2929.16, 2929.17, or 2929.18 of theRevised Code, or was under post-release control for a prioroffense.
 (b) The harm caused by the multiple offenses was so great orunusual [**30] that no single prison term for any of the offensescommitted as part of a single course of conduct adequatelyreflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstratesthat consecutive sentences are necessary to protect the publicfrom future crime by the offender."
 {¶ 46} R.C. 2929.14(E)(4). See, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165.
 {¶ 47} When a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c), which requires that the court "make a finding that gives its reasons for selecting the sentences imposed." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Comer, supra. See, also, Statev. Hudak, Cuyahoga App. No. 82108, 2003-Ohio-3805, citing,State v. Brice (Mar. 29, 2000), Lawrence App. No. 99 CA21. Moreover, "a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Comer, supra. These findings and reasons need not "directly correlate each finding to each reason or state a separate reason for each finding" but must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision. State v.Cottrell, Cuyahoga App. No. 81356, 2003-Ohio-5806; Comer,
supra, citing, Griffin Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1, 12.
 {¶ 48} In sentencing O'Neal, the court stated:
"I find that this harm was so great, so unusual, that a singleterm would not adequately reflect the seriousness of the conduct,and that the offender's criminal history shows that consecutiveterms are needed to protect the public.
 Furthermore, I find that the consecutive sentences ofpunishment involved here are not disproportionate to the conductand to the danger the offender poses in this matter."
 {¶ 49} Following these findings, the court explained its reasons by emphasizing that O'Neal committed two separate and distinct acts and that his prior convictions evidenced "continuing" conduct of violence warranting consecutive sentences. Specifically, the court reasoned:
"Now, we have separate and distinct acts here that result insubstantial harm to one family. I believe that this type ofconduct accelerated over the course of years. The priorconvictions are for assault or other types of violent acts. Thisis continuing in that type of nature, and I believe that theseare appropriate sentences under the circumstances."
 {¶ 50} Based on these findings and reasons, we find that the trial court complied with the statutory mandates of R.C.2929.14(E)(4) and 2929.19(B)(2)(c). We further find no clear and convincing evidence that the trial court's sentence was unsupported by the record or contrary to law. Likewise, we find that the trial court properly considered O'Neal's prior offenses in reaching its decision to impose consecutive sentences.
 {¶ 51} Thus, O'Neal's first pro se assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 52} In his second pro se assignment of error, O'Neal contends that he was denied effective assistance of counsel because his counsel failed to make a Fourth Amendment challenge of the State's evidence. Specifically, he contends that his counsel should have moved to suppress the knife which the police obtained from Jones.
 {¶ 53} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; Statev. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910; and Strickland v.Washington (1984), 466 U.S. 668.
 {¶ 54} To prevail on a claim of ineffective assistance of counsel, the appellant must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687.
 {¶ 55} O'Neal fails to demonstrate that his counsel's decision not to raise a Fourth Amendment challenge of the evidence was deficient. It is well settled that "consent to a warrantless search will not be held invalid nor the resulting search unreasonable when one with authority over the premises voluntarily permits the search." State v. Sneed (1992),63 Ohio St.3d 3, 7, citing Schneckloth v. Bustamonte (1973),412 U.S. 218. The record reflects that Jones allowed the police into her home and voluntarily gave them the knife. Because Jones lived at the home and provided consent, we fail to find any violation of O'Neal's Fourth Amendment rights. Accordingly, even if O'Neal's counsel had sought to suppress the knife, he would not have prevailed and, thus, we cannot say that counsel was ineffective for neglecting to raise a meritless argument. See State v.Wade, Cuyahoga App. No. 81080, 2002-Ohio-6827, citing,Kimmelman v. Morrison, 477 U.S. 365,382.
 {¶ 56} O'Neal's second pro se assignment of error is overruled.
 {¶ 57} Judgment affirmed in part, reversed in part, and kidnapping conviction vacated.
It is ordered that the parties divide the costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J. and Rocco, J. concur.
[1] Based on this finding, O'Neal's fifth assignment of error claiming that the two offenses are "allied offenses" is moot.