JOURNAL ENTRY AND OPINION
AFFIRMED IN PART;
 SENTENCE MODIFIED; REMANDED FOR CORRECTION OF SENTENCING ENTRY
{¶ 1} Defendant-appellant, Damien Peterson, appeals his convictions for aggravated robbery and felonious assault. For the reasons set forth below, we affirm the finding of guilt, modify the sentence, and remand for correction of the sentencing entry.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on one count each of aggravated robbery, felonious assault, and having a weapon while under disability. The aggravated robbery and felonious assault counts each contained one-and three-year firearm specifications, notice of prior conviction and repeat violent offender specifications. After a jury trial, appellant was found guilty of aggravated robbery, felonious assault, and the accompanying firearm specifications. The court found him guilty of having a weapon while under disability and the remaining specifications. Appellant was sentenced to a 15-year prison term, which included three years on the repeat violent offender specification, to be served prior and consecutively to the sentence on the underlying offenses.
 {¶ 3} At trial, the victim, Matthew Donohue, testified that he was the general manager of a restaurant located at the corner of W. 6th Street and Lakeside Avenue in Cleveland. Donohue explained that on August 13, 2005, the Cleveland Browns had their first pre-season game at their stadium, which was in close proximity to the restaurant, and the restaurant was very busy that day and into the following day.[1] *Page 3 
 {¶ 4} On August 14, 2005, Donohue left the restaurant a few minutes before 6:00 a.m. He testified that, as was his usual custom, he had cash from the restaurant, which was to be deposited in the bank. He estimated that he had an amount between $3,500 and $4,000 and testified that it was in a messenger bag which he was wearing on his right shoulder. Donohue explained that he lived an approximate three-minute walk from the restaurant and therefore was not uncomfortable walking with large sums of money on his person.
 {¶ 5} The victim testified that as he was walking across Lakeside Avenue, under the Shoreway Bridge, a man "popped up with a gun" and demanded the bag. Donohue told the man he did not "want to do this," to which the man responded "don't make me kill you for the fucking bag." The victim described the man as pointing the gun at "pretty much eye level."
 {¶ 6} Donohue testified that the man then reached for the bag, grabbed hold of its strap and hit him in the head with the gun. During the course of the ensuing tussle, the victim stumbled, the strap of the bag slid off his shoulder and the man was able to grab the bag from him. Donohue described getting up from the ground and the man firing a shot at him, with the bullet "whisking" by his ribcage. Donohue chased the man, who then fired one more shot. The victim screamed for help at that point and called 9-1-1 from his cell phone.
 {¶ 7} Donohue continued to chase the man and ran up to a car where the man was seated in the driver's seat. The victim was able to approach the car and *Page 4 
bang on its window before the man drove away. All this was occurring while Donohue was on the phone with the 9-1-1 operator and he was able to give the operator a description of the vehicle, the direction in which it was traveling and the license plate number. The victim explained his behavior of chasing the man who had twice fired shots as being "a natural reaction" to him being "pissed" about losing the money after working for 14 hours.
 {¶ 8} After the police arrived, the victim took them to the place where the man had fired the shots. The police retrieved two shell casings, which were admitted into evidence at trial.
 {¶ 9} During his interview with the police, Donohue was shown two different photo arrays. The first one did not feature appellant and Donohue did not make an identification. The second one did feature appellant and the victim identified one of the individuals as "possibly" being the perpetrator. A physical line-up was then conducted with the individuals from the second photo array. Donohue identified a man (appellant) who he was "99% sure" was the perpetrator. To be certain, though, Donohue requested that the individuals speak the words that were spoken to him during the incident. After hearing the individuals speak, the victim identified appellant as the perpetrator, stating that he was "100% sure."
 {¶ 10} The police determined that the owner of the car which the perpetrator used during the incident belonged to an individual by the name of Odell Merriweather. The investigation revealed that Odell was an elderly man who resided *Page 5 
in a nursing home at the time of the offense and had not been driving because of medical conditions. Odell's daughter, Valerie Merriweather, who sometimes drove the car, contacted the police after she learned that they had been looking for her father. Valerie indicated that she and her brother, Odell Jr., were the people who mainly had access to the car. She further stated that appellant, with whom she had a friendly relationship, also had access to the car when he would fix it, but that she would generally be there when that occurred. Another man, Kenny McSwail, also sometimes would fix the car. The investigating detective testified, however, that Kenny did not match the description of the perpetrator. With Valerie's permission, the investigating detective searched the car.
 {¶ 11} Valerie was also shown two photo line-ups. In one line-up, she identified her brother Odell Jr., and in the other one she identified a former boyfriend, Douglas Littlejohn. She identified appellant from a Bureau of Motor Vehicles photo. Valerie admitted that she had a federal conviction for aiding and conspiracy to bank robbery, as well as state convictions for drug possession, receiving stolen property and forgery.
 {¶ 12} The investigating detective also interviewed Valerie's brother, Odell Jr. After his interviews with Valerie and Odell Jr., the detective contacted Shawn Riddle, a parole officer. Appellant was subsequently arrested at the Adult Parole Authority.
 {¶ 13} At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense rested without presenting *Page 6 
evidence. As previously mentioned, appellant was convicted, in part, of aggravated robbery and felonious assault. In his first assignment of error, appellant contends that the evidence was insufficient to support his aggravated robbery and felonious assault convictions. In his second assignment of error, appellant contends that his aggravated robbery and felonious assault convictions were against the manifest weight of the evidence.
 {¶ 14} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v.Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668. In the simplest sense, the difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion.Thompkins at 390 (Cook, J., concurring).
 {¶ 15} Sufficiency is a question of law. Id. at 386; Smith, supra at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.Thompkins at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins at 386; Smith at 113. *Page 7 
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 17} Manifest weight is a question of fact. Thompkins at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. Under this construct, the appellate court "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." Id.
 {¶ 18} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." Thompkins at 387. "A court reviewing questions of weight is not required to view the evidence in a light most *Page 8 
favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 19} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency when conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins at 388. In the present case, manifest weight is dispositive.
 {¶ 20} R.C. 2911.01(A)(1), governing aggravated robbery, provides as follows:
 {¶ 21} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * *Page 9 
 {¶ 22} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 23} R.C. 2903.11(A)(2), governing felonious assault, provides as follows:
 {¶ 24} "(A) No person shall knowingly
 {¶ 25} "* * *
 {¶ 26} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section2923.11 of the Revised Code."
 {¶ 27} In support of his contentions regarding sufficiency and manifest weight of the evidence, appellant first cites the fact both Donohue and Valerie testified they worked at the same place. Aside from calling this fact "eyebrow-raising," appellant does not elaborate upon how it affects the sufficiency and/or weight of the evidence. Upon review, we do not find this fact to be so "exceptional" as to weigh "heavily against the conviction," and thus overrule appellant's argument on this ground as it relates to both sufficiency and manifest weight of the evidence.
 {¶ 28} Appellant further argues in support of his sufficiency and manifest weight of the evidence contentions that the victim's testimony regarding his response to the perpetrator was "skeptical." Donohue explained his reaction as "a natural reaction" to him being "pissed" about losing the money after working for 14 *Page 10 
hours. We do not find that testimony to be so incredible as to weigh "heavily against the conviction." Regardless of the wisdom of Donohue's actions, his account was corroborated by the physical evidence. Specifically, Donohue testified that the perpetrator shot at him twice, and the police, in fact, recovered two spent shell casings from the area where Donohue said the shooting occurred.
 {¶ 29} Moreover, the fact that Donohue was unable to state the exact amount of money he was robbed of does not make this an "exceptional" case weighing "heavily against the conviction," as appellant suggests. Appellant's account that he had somewhere between $3,500 and $4,000 in the messenger bag is not incredible. Furthermore, we are not persuaded by appellant's argument that he did not have greater access to Odell Merriweather's car than any other man associated with Valerie and/or Odell Jr. Donohue testified that after being shown the second photo array, he was "99% sure" the perpetrator was appellant. To be certain, though, Donohue requested that the individuals speak the words that were spoken to him during the incident. After hearing the individuals speak, the victim identified appellant as the perpetrator, stating that he was "100% sure."
 {¶ 30} Appellant's other allegation in support of his sufficiency and manifest weight of the evidence claims (i.e., that exculpatory evidence was not pursued by defense counsel) goes to his claim of ineffective assistance of counsel and will be addressed under that assignment of error. *Page 11 
 {¶ 31} Based upon the above analysis, this is not the "the exceptional case in which the evidence weighs heavily against the conviction" and, therefore, appellant's first and second assignments of error are overruled.
 {¶ 32} In his third assignment of error, appellant contends that the assistant prosecuting attorney engaged in misconduct by questioning the investigating detective about a parole officer's involvement in appellant's arrest. We disagree.
 {¶ 33} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. State v.Treesh, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. State v. Lott (1990),51 Ohio St.3d 160, 166, 555 N.E.2d 293. "The touchstone of analysis ` is the fairness of the trial, not the culpability of the prosecutor.'" State v.Gapen, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, quotingSmith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940,71 L.Ed. 2d 78.
 {¶ 34} Prior to trial, the defense filed a motion in limine to exclude evidence of appellant's parole/post-release control status and prior convictions for aggravated robbery and felonious assault. Prior to trial, the court ruled that matters relating to appellant's prior record were inadmissible. In regard to appellant's parole/post-release control status, the court originally held its ruling in abeyance. Defense *Page 12 
counsel raised his concern, however, that appellant's parole status might be brought up in opening argument. In response, the trial court stated that "if it was a factor in his arrest and charge in this case then the State [may] introduce it, if it's a factor." The court further stated that it would "rely on the State's attorneys here to be prudent in what they offer, being cognizant of the rights of the Defendant."
 {¶ 35} At trial, the investigating detective was questioned as follows by the assistant prosecuting attorney as to how he proceeded after Valerie identified appellant from a Bureau of Motor Vehicles photo and after his interview with Odell Jr.:
 {¶ 36} "Q. So, what did you do next?
 {¶ 37} "A. Well, I did contact Shawn.
 {¶ 38} "[Defense Counsel]: Objection.
 {¶ 39} "[The Court]: Overruled.
 {¶ 40} "* * *
 {¶ 41} "Q. Okay. You contacted who?
 {¶ 42} "A. Shawn Riddle.
 {¶ 43} "Q. Okay. Why is that?
 {¶ 44} "[Defense Counsel]: Objection, Your Honor.
 {¶ 45} "[The Court]: Overruled.
 {¶ 46} "A. Well, he's a parole officer. *Page 13 
 {¶ 47} "Q. Okay. And, what happened next?
 {¶ 48} "A. Damien Peterson was arrested as a result of that conversation.
 {¶ 49} "Q. Okay. So what did you do?
 {¶ 50} "A. I was notified the day of the arrest. I responded with a partner to APA, Adult Parole Authority. And, I picked up Damien Peterson and took him to our jail."
 {¶ 51} We do not find that the questioning was improper. As previously mentioned, the trial court specifically ruled that, if appellant's parole status were a factor in his arrest, it could be mentioned. The questioning was limited to appellant's arrest; it did not inquire into his prior criminal record and, in fact, did not even explicitly reveal that he was on parole or that Riddle was his parole officer. Therefore, appellant's third assignment of error is overruled.
 {¶ 52} In his fourth and final assignment of error, appellant contends that he was denied effective assistance of counsel. We disagree.
 {¶ 53} To demonstrate ineffective assistance, a defendant must show that counsel's performance fell "below an objective standard of reasonable representation." State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. He must also demonstrate prejudice, i.e., "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., paragraph three of the syllabus. "A reasonable *Page 14 
probability is a probability sufficient to undermine confidence in the outcome." State v. Keene, 81 Ohio St.3d 646, 667, 1998-Ohio-342,693 N.E.2d 246, citing Strickland v. Washington (1984), 466 U.S. 668, 694,104 S. Ct. 2052, 80 L. Ed.2d 674. Because of the inherent difficulties in making this evaluation, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. State v. Igoe, Cuyahoga App. No. 84004, 2004-Ohio-6860, citing Strickland, 466 U.S. at 689.
 {¶ 54} In support of his contention of ineffective assistance of counsel, appellant cites the fact that during a pretrial hearing, defense counsel stated that an individual by the name of Paul Tate provided information to the investigating detective regarding an individual by the name of Antoine Sealy as a possible suspect in this case. The State provided the last known addresses for Tate and Sealy, and in fact had them on its witness list, but stated that it had been unable to contact or locate them. The parties agreed, therefore, that the investigating detective could testify about the statement and it would not be hearsay.
 {¶ 55} The next day, however, defense counsel withdrew his stipulation that the detective could testify as to the information Tate had provided to the detective and objected to the admission of any such testimony as being hearsay. Counsel specifically stated that it was his, and appellant's, desire not to enter into any such stipulation. *Page 15 
 {¶ 56} Appellant now argues that his counsel was ineffective for "not pursuing this line of questioning with the detective." The record demonstrates, however, that appellant's counsel fulfilled one of his most important duties to appellant; the duty to consult with the defendant on important decisions. Strickland v. Washington, supra at 688. Specifically, counsel stated that the decision to withdraw the stipulation was not only his desire, but also appellant's desire.
 {¶ 57} Appellant further argues that his counsel was ineffective for not requesting a continuance of trial so that he could locate Tate and Sealy. Tate and Sealy were not "last-minute surprise" witnesses, however. Tate was identified as a witness on the State's January 23, 2006 witness list, and both Tate and Sealy were identified on the State's March 1, 2006 supplemental witness list. Trial commenced on April 25, 2006. Counsel had plenty of time to attempt to locate them; they, apparently, however, were simply unable to be found and the court was under no obligation to continue the trial until they were found.
 {¶ 58} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 59} Finally, although not raised by appellant, we sua sponte consider appellant's sentence as it affects his substantial rights. See Crim.R. 52(B). As previously mentioned, appellant's sentence included three years for the repeat violent offender specifications. Pursuant to R.C. 2929.14(D)(2)(b), an offender may be sentenced to an additional term for a repeat violent offender specification only if he was sentenced to the maximum term for the underlying offense. Appellant did *Page 16 
not receive the maximum sentence for the aggravated robbery or felonious assault.[2] Thus, appellant was improperly sentenced on the repeat violent offender specifications. Accordingly, we modify appellant's sentence to 12 years.[3]
 {¶ 60} Affirmed in part; sentence modified; remanded to trial court for correction of sentencing entry and transmittal of the modified entry to the appropriate institution.
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE
COLLEEN CONWAY COONEY, P.J., and MARY J. BOYLE, J., CONCUR
[1] After the bar closed, the restaurant served breakfast.
[2] Appellant was sentenced to nine years for the aggravated robbery, a felony of the first degree and for which the maximum sentence would have been ten years. He was sentenced to five years for the felonious assault, a felony of the second degree and for which the maximum sentence would have been eight years.
[3] At argument, the assistant prosecuting attorney agreed that the three-year sentence on the repeat violent offender specification should be vacated. *Page 1