JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Bobby Williams appeals from his conviction for aggravated murder. For the reasons set forth below, we affirm.
 {¶ 2} On June 17, 2005, defendant was indicted in connection with the shooting death of Eladio Delgado. Defendant was charged with two counts of aggravated murder, with felony murder and one-year and three-year firearm specifications, two counts of aggravated robbery, with one-year and three-year firearm specifications; a notice of prior conviction and a repeat violent offender specification; and one count of having a weapon while under disability.
 {¶ 3} Defendant pled not guilty. The charge of having a weapon while under disability and the notice of prior conviction and repeat violent offender specifications were subsequently tried to the court and the remainder of the charges were tried to a jury commencing on October 30, 2006.
 {¶ 4} The state's evidence demonstrated that, on June 6, 2005, Eladio Delgado sustained a gunshot wound to his right upper chest which penetrated his right lung and his heart. The 71 year-old was shot at a distance of one and one-half to two and one-half feet and died as a result of the shooting.
 {¶ 5} The state's evidence also demonstrated that, on the day of the shooting, Eddie Cook observed defendant with a revolver. Shortly after midnight on June 6, 2005, defendant, Eddie Cook, and Ronnie Crayton, a.k.a. "Dupper," drove around together then stopped in Dupper's driveway. Dupper and defendant then *Page 4 
decided to switch cars. A vehicle passed them and someone shouted, "There go[es] a lick." According to Cook, a "lick" is a drug deal. Based upon the color and markings of the vehicle, the group believed it to be that of "the hundred dollar man," a white man who drives a green Jeep and spends one hundred dollars on crack.
 {¶ 6} Cook knew that it was not the "hundred dollar man" because that individual's vehicle had out of state plates, unlike the driver who passed them. Defendant and Dupper nonetheless took off after the man in defendant's car.
 {¶ 7} Memory Calloway observed defendant and Dupper following what appeared to be a Jeep. Dupper continued to drive and Defendant then got out of the car and got into the other vehicle. Calloway heard a faint pop and then saw defendant get out of the vehicle and flee the area with Dupper. She next observed an ambulance and police car in the area of the truck.
 {¶ 8} Defendant and Dupper returned to Dupper's house a short time later. Cook got into Dupper's car and Dupper took him home. Defendant left in his own car. Defendant parked on Hecker Road and spoke to Ms. Bost. According to Bost, defendant was giggling, counting money, and stated that he had just robbed and killed a crack head. Bost also indicated that defendant was drunk and smelled of alcohol. The next day, Bost learned that Delgado had been shot and she spoke with Delgado's son and also spoke with the police.
 {¶ 9} Delgado's son, Antonio, went to the house that his brother, Oscar, *Page 5 
shared with their father. Antonio and Oscar observed their father's car near the house with their father slumped over the steering wheel. They opened the door of the vehicle to speak with him and observed blood. Eladio was taken by ambulance to MetroHealth where he died on June 8, 2005. Antonio then scoured the neighborhood to determine what had happened. Antonio learned defendant's name and went to the area of East 71st Street and Hecker to confront defendant. Antonio testified that he accused defendant of shooting his father and defendant denied doing so. Police arrived and arrested defendant.
 {¶ 10} Antonio further testified that his father never used drugs and had just taken his girlfriend home prior to the shooting. He did not have his wallet on him the night of the shooting but he usually kept $20 to $30 in his car visor.
 {¶ 11} Crayton, a.k.a. Dupper, who was seventeen years-old at the time, testified that he pled guilty to a juvenile complaint charging him with involuntary manslaughter and a firearm specification in connection with the shooting of Eladio Delgado. He is presently in the Marion Juvenile Correction Facility as a result of his role in the Delgado shooting. Pursuant to his plea agreement with the state, he was required to provide testimony in the matter against defendant and he avoided being bound over and tried as an adult. He will remain in the juvenile facility for two years and will then serve up to nine years in a facility for adults.
 {¶ 12} According to Dupper, defendant had a gun that had a "spin revolver." On June 5, 2005, he and defendant traded cars and defendant had a couple of *Page 6 
grams of crack cocaine. Later that night, Dupper returned defendant's car keys to him and observed that defendant was high or drunk. They saw a green Jeep with a beige top drive past and thought it was the "hundred dollar man," their crack customer. They tried to flag the man down but he did not stop. They followed the man in defendant's car. The Jeep then stopped and defendant got into it. Dupper continued to drive then turned around and came back for defendant.
 {¶ 13} They drove to Dupper's house. Dupper denied seeing or hearing defendant shoot Delgado, but defendant said something to Dupper. Dupper then conveyed to the others that they had to leave and that defendant had shot someone. Dupper took Cook home then went to his girlfriend's house. The next day, Dupper turned himself in to police.
 {¶ 14} Several months later Memory Calloway spoke with Dupper's mother, who urged her to speak with Det. Hasan of the Cleveland Police Department. Calloway then gave a statement to police. Shortly before trial, she received a three-way call from defendant and a female who asked her not to come to court. According to Calloway, defendant indicated that "he got [her]," meaning that she should not worry and that he would pay her back when he got released from jail. At the close of the conversation, the female reiterated "forget it, don't go." Calloway also testified that she is currently in county jail because she defied a subpoena in this matter and she did not want to testify.
 {¶ 15} Debbie Crayton, Dupper's mother, testified that early in the morning of *Page 7 
June 6, 2005, she observed a lot of people on her street and determined that something was wrong. She spoke with Det. Gray of the Cleveland police, then gave the detective a picture of Dupper. She attempted to locate her son and also made arrangements for Dupper to speak with police. Her son was labeled a snitch, her house was shot, and people from the neighborhood stood outside her house on court dates.
 {¶ 16} The defense elected not to present witnesses.
 {¶ 17} Defendant was subsequently convicted of one count of murder, as a lesser included offense of aggravated murder as charged in Count One, and found guilty of all remaining charges and specifications. Following a penalty hearing, he was sentenced to life without parole and concurrent terms of incarceration for the remaining charges, plus a three-year term for the firearm specification. Defendant now appeals and assigns two errors for our review.
 {¶ 18} Defendant's first assignment of error states:
 {¶ 19} "The trial court erred by permitting the State of Ohio to introduce unreliable, prejudicial evidence to establish that the Defendant-Appellant Williams directly and indirectly intimidated witnesses in this case in order to deter them from testifying against him."
 {¶ 20} Defendant complains that the trial court permitted the introduction of inadmissible "other acts" evidence when it allowed testimony that, in general, residents are intimidated by neighborhood drug dealers, that defendant called *Page 8 
Memory Calloway from jail and a woman on the line told Calloway not to appear for trial, that some of the witnesses were reluctant to testify, and that Debbie Crayton was intimidated by young men in the neighborhood after court proceedings, her son Dupper was labeled a "snitch," and her godson was shot in her driveway.
 {¶ 21} Evidence of prior bad acts is governed by Evid.R. 404(B) which states:
 {¶ 22} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 23} See, also, State v. Lowe (1994), 69 Ohio St.3d 527, 530,1994-Ohio-345, 634 N.E.2d 616, citing State v. Broom (1988),40 Ohio St.3d 277, 282-83, 533 N.E.2d 682. Evidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." State v. Wilkinson (1980), 64 Ohio St.2d 308,415 N.E.2d 261.
 {¶ 24} In State v. Soke (1995), 105 Ohio App.3d 226, 663 N.E.2d 986, this court noted that evidence of threats or intimidation of witnesses reflect a consciousness of guilt and are admissible as admission by conduct. Id., citing to State v. Richey (1992), 64 Ohio St.3d 353, 357,595 N.E.2d 915. Hence, intimidation of a witness is not "wholly independent" of the charged offenses. State v. Soke, *Page 9 
supra, citing State v. Leonard (May 21, 1993), Lawrence App. No. CA92-12; State v. Reese (Jan. 7, 1988), Cuyahoga App. Nos. 53115 and 53116.
 {¶ 25} Attempts by persons other than the accused to suppress evidence is admissible against the accused where the accused is connected to such attempts. See State v. Walker (1978), 55 Ohio St.2d 208,378 N.E.2d 1049, citing Mefford v. State (1920), 13 Ohio App. 106.
 {¶ 26} Moreover, the labeling of an individual as a "snitch" is a form of intimidation. State v. Exum, Franklin App. No. 05AP-894,2007-Ohio-2648.
 {¶ 27} In State v. Cottrell, Cuyahoga App. No. 81356, 2003-Ohio-5806, this court stated:
 {¶ 28} "Cottrell finally argues that error occurred when the state was permitted to ask witness Joshua Williams if he was afraid to testify against Cottrell. We find this was a legitimate question given the fact Williams had to be forcibly brought to the trial on an arrest warrant before he would testify."
 {¶ 29} By application of all of the foregoing, the first assignment of error is without merit. The trial court did not err in permitting introduction of evidence concerning the drug deals in general as this was blended or connected with the instant matter. Evidence of threats or intimidation of witnesses reflect a consciousness of guilt and are admissible as admission by conduct. The instruction from the unknown woman that Calloway did not appear for trial was connected with defendant through the three-way call and was therefore admissible. The labeling of *Page 10 
Dupper as a "snitch" is a form of intimidation and was admissible. Finally, the evidence that witnesses were afraid and appeared under subpoena was admissible.
 {¶ 30} Defendant's second assignment of error states:
 {¶ 31} "The Defendant-Appellant was denied his constitutionally guaranteed right to due process of law by the improper, inflammatory and prejudicial arguments of the prosecuting attorney in the final summation."
 {¶ 32} Within this assignment of error, defendant complains that the prosecuting attorney, in remarks contrasting the American justice system to that of Russia or the Middle East, suggested that defendant wasted the jurors' time by going to trial. He also complains that the prosecuting attorney argued that defendant had manipulated witnesses and "the case" and noted that witnesses were fearful to testify. He also complains that the prosecuting attorney unfairly evoked sympathy for Delgado. He next claims that the defense had used a "tactic" by referring to matters not in evidence, unfairly stated that "subpoena power works both ways," and made a comment pertaining to defendant's failure to testify as he stated "only [defendant] can tell you what happened inside his mind." Finally, he complains that defendant made an improper appeal to community values by referencing the "war" on drugs and arguing that the jury not let defendant win.
 {¶ 33} In State v. Ervin, Cuyahoga App. No. 88618, 2007-Ohio-5942, this Court stated: *Page 11 
 {¶ 34} "The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper and, if so, whether they prejudiced appellant's substantial rights." Id., citing toState v. Peterson, Cuyahoga App. No. 88248, 2007-Ohio-1837 and State v.Treesh, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 35} Prosecutorial misconduct will not provide the basis for reversal unless it can be said that the misconduct deprived the appellant of a fair trial based on the entire record. State v.Peterson, supra. "The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor." State v. Gapen,104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047.
 {¶ 36} Generally, prosecutors are entitled to considerable latitude in opening and closing argument. State v. Ballew, 76 Ohio St.3d 244,1996-Ohio-81, 667 N.E.2d 369. In closing arguments, a prosecutor may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293. "Moreover, because isolated incidents of prosecutorial misconduct are harmless, the closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced." State v. Stevens, Montgomery App. No. 19572,2003-Ohio-6249.
1. Russia / Middle East Comment
 {¶ 37} In this instance, the prosecuting attorney stated:
 {¶ 38} "You have been paying attention. You have been participating in the *Page 12 
greatest justice system in the history of the world.
 {¶ 39} "As you participate and definitely as you go back there, you're going to appreciate what that means because this isn't like old Russia; this isn't like the Middle East.
 {¶ 40} "In this country, no matter what somebody has done, no matter how many eyewitnesses there are, no matter how many people he has bragged to about what he has done, he still gets his day in court. He still gets to have the State of Ohio present the evidence against him and show you why he's been charged with these crimes and show you the case against him, and bring in these people who have been manipulated by him or his associates, and bring these people who don't want to come in here because it's not very popular to testify against this man.
 {¶ 41} "Everybody gets that right. That's what we've been doing here over the last eight days, and that's the way it should be. Everybody gets their day in court." (Tr. 1116-1117).
 {¶ 42} We find that, viewed in their entirety, the remarks were primarily addressed to our justice system and did not imply that defendant did something improper in choosing to go to trial.
2. Manipulation of Trial/Witnesses
 {¶ 43} In this instance, the prosecuting attorney argued that "it's not very popular to testify against this man," and he accused the defendant of manipulation. In light of our determinations in the previous assignment of error, we reject the *Page 13 
contention that this was improper argument.
3. Sympathy for Victim
 {¶ 44} In this instance, the prosecuting attorney stated:
 {¶ 45} "* * * [T]his man took the life of another, took the life of a 71 year-old man for his own selfish motives, and but for his actions, that man would still be with his family, would still be a valuable part of this community you heard about. * * * I want you to give concern not only to the rights of those who were charged with a crime but the rights of the people who are left behind."
 {¶ 46} In order for a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams (1986),23 Ohio St.3d 16, 20, 490 N.E.2d 906.
 {¶ 47} Here, the remarks were a permissible reference to the victim who, the undisputed evidence showed, was shot after being mistaken for the "hundred dollar man" drug customer. A prosecutor may make such comments.
 {¶ 48} As to the additional comments asking the jury to show concern for the "rights of the people who are left behind" and not just the rights of the accused, there was an objection to this remark which was sustained. We therefore find no reversible error. Accord State v.Jackson (July 29, 1993), Cuyahoga App. No. 63167.
 4. Defense "Tactics" *Page 14 
 {¶ 49} We conclude that the portion of the argument which disputed the defense's reference to matters not in evidence as a defense "tactic" is not error. See State v. York, Cuyahoga App. 87814, 2006-Ohio-6934
(reference to defense "red herrings" did not arise to the level of misconduct.)
5. Failure to Testify
 {¶ 50} In this matter, the jury received a cautionary instruction immediately following this remark, so we cannot say that prejudicial error occurred. (Tr. 1131). Accord, State v. Ferguson (1983),5 Ohio St.3d 160.
6. "War" on Drugs
 {¶ 51} "You've heard there is a war going on out there and you've heard that * * * Bobby Williams won a battle in that war. The bad guys won that day. Now it's time to hold him accountable for his actions. You've heard Ronnie Crayton's family's price for his participation assisting the State."
 {¶ 52} As we noted in State v. Garrett, Cuyahoga App. No. 80172, 2003-Ohio-274, "although `[a] prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking * * * [,]' `[i]n order to rise to constitutional proportions, an improper prosecutorial remark must cause substantial prejudice to the defendant.'"
 {¶ 53} This remark did not arise to the level of urging a conviction in order to protect community values but rather were aimed at having defendant be held accountable for his own actions. The remarks did not cause substantial prejudice. *Page 15 
 {¶ 54} "7. Subpoena power
 {¶ 55} In State v. Williams (August 16, 1990), Cuyahoga App. No. 57399, this Court found no misconduct in connection with the prosecutor's remark that the subpoena power rested with both the state and the defendant and noted that the remark was made in response to the defendant's attorney's suggestion during closing argument that the state had the ability to produce certain witnesses. Likewise in this matter, the remark was made in response to defense challenges to the evidence offered by the state.
 {¶ 56} In accordance with the foregoing, the second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 16 
PATRICIA ANN BLACKMON, P.J., CONCURS.
 MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY. *Page 1