[Cite as *State v. Williams*, 2013-Ohio-4471.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 94965**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VAN WILLIAMS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-525486

**BEFORE:** Jones, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 10, 2013

**ATTORNEY FOR APPELLANT**

Craig T. Weintraub
55 Public Square
Suite 1600
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Richard J. Bombik
        Matthew E. Meyer
        Christopher D. Schroeder
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** This cause is before this court on remand from the Ohio Supreme Court. Defendant-appellant Van Williams appeals his conviction. For the reasons that follow, we affirm.

## I. Procedural History

**{¶2}** In 2009, Williams was charged in a 61-count indictment with 12 counts of rape, 12 counts of unlawful sexual conduct with a minor, 12 counts of kidnapping, 24 counts of gross sexual imposition, and one count of intimidation of a crime victim or witness. All 61 counts involved a single victim, J.H. Prior to trial, the state filed a "Motion to Admit Evidence Pursuant to Evidence Rule 404(B) and R.C. 2945.59," indicating that it intended to admit into evidence prior allegations of sexual abuse committed by Williams against a teenage boy, A.B.

**{¶3}** The case proceeded to a trial by jury during which the trial court granted the state's motion to admit the evidence and allowed in A.B.'s testimony. Williams was subsequently convicted by a jury of six counts of gross sexual imposition, seven counts of kidnapping, five counts of rape, and five counts of unlawful sexual conduct with a minor. The court sentenced him to 20 years in prison.

**{¶4}** Williams filed a direct appeal and this court, sitting en banc, considered these two assignments of error:

> I. Appellant was denied his constitutional right to a fair trial because the trial court erred by admitting highly prejudicial evidence and by not complying with Ohio Evidence Rule 403.

III. The trial court erred in failing to grant appellant's motion for judgment of acquittal on all charges because the evidence presented was not legally sufficient to support a conviction.

{¶5} We held there was sufficient evidence to support Williams's convictions but that the trial court improperly allowed into evidence testimony pursuant to Evid.R. 404(B). *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1203 (8th Dist.).

{¶6} The state appealed and the Ohio Supreme Court reversed and reinstated Williams's convictions. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278. The Ohio Supreme Court held that "Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes." *Id.* at the syllabus.

{¶7} The high court reinstated the judgment of the trial court, but, upon reconsideration, remanded the case to this court for consideration of the remaining assignments of error. *State v. Williams*, 133 Ohio St.3d 1512, 2012-Ohio-6209, 979 N.E.2d 1290.

## II. Pertinent Facts

{¶8} The following facts are excerpted from this court's opinion in *Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1203:

> J.H.'s grandmother testified that she had custody of J.H. They belonged to the same church as Williams and once J.H. joined the men's choir, Williams

began to mentor him, since her grandson did not otherwise have a "male role model" in his life. The grandmother testified Williams took J.H. various places including to get his hair cut, to shop for video games, to the movies, and to see J.H.'s friends. She testified that Williams was constantly buying J.H. gifts, such as video games, clothes, shoes, a guitar and guitar lessons, and he also gave J.H. money to do odd jobs around his house.

Michael Tessler testified that he worked at J.H.'s school. During a May 2009 counseling session, J.H. disclosed to Tessler that a man at his church had been molesting him. Tessler reported the allegations to the Cuyahoga County Department of Children and Family Services ("CCDCFS").

* * *

A.B. testified that when he was 16 years old, he attended a local high school where Williams served as the swim coach. A.B. was not close to his own father, but he joined the swim team and developed a close relationship with Williams. In 1997, after a swim meet at a high school in Perry, Ohio, Williams took A.B. behind that school's concession stand, kissed A.B. and "fondled" him. When the team returned to their school later that night, he and Williams engaged in oral sex in the locker room. He testified that although he and Williams never engaged in anal intercourse, they engaged in oral sex two to three times per week in the school's locker room and that activity lasted until the end of the school year. He further testified that the sexual activity was consensual.

J.H.'s mother * * * testified that she had a drug problem when her son was young so she sent J.H. to live with his grandmother. She testified that Williams was the only influential male figure in her son's life.

J.H., who was 16 years old at the time of trial, testified that he developed a close relationship with Williams after joining the men's choir at church. He testified that Williams would often pick him up and take J.H. to his house. Williams bought him gifts, including a watch, clothing, and a guitar.

J.H. testified that over time Williams became someone that he "completely trusted." But Williams eventually began to molest him. The first incident occurred in September 2008 when J.H. was 14 years old. J.H. testified he was sitting on a bed in Williams's house and the older man began to massage J.H.'s back. Williams then massaged his legs and "groin area." Williams told J.H. not to tell anyone because Williams could go to jail.

The next incident occurred later the same month. Williams massaged J.H.'s back and groin area. The next incident occurred in Williams's basement when Williams was giving J.H. a haircut. J.H. testified that during the haircut Williams put the clippers down, began to massage J.H.'s back, pulled J.H.'s pants down and bent him forward, and then "[stuck] his private part in my behind." When he was "done," J.H. explained, Williams got a cold rag and wiped J.H.'s buttocks. J.H. testified that the sexual intercourse hurt.

The next act of anal intercourse occurred in Williams's bedroom and was also preceded by Williams massaging J.H.'s back and groin area. This time, when Williams touched J.H.'s penis, J.H. asked him why he was doing this. Williams replied "he wasn't getting any from his wife." During this incident, Williams abruptly stopped the intercourse, thinking his wife was coming home. When Williams realized they were still alone, he took J.H. to the basement and resumed anal intercourse. J.H. testified Williams told him he would stop "doing this to me" before J.H. turned 15 years old.

Then next time Williams assaulted him, Williams used Vaseline on his (Williams's) penis. J.H. testified that the last assault happened in January 2009 when he was 15 years old, in the computer room at Williams's house.

J.H. testified that he was confused if sexual activity was something boys were supposed to do with older men. He stated he did not put up much resistance because he was afraid Williams would hurt him.

Shawana Cornell, a CCDCFS social worker, testified that she was assigned to J.H.'s case after the county received a report that J.H. had been sexually abused. The state inquired about the conversation she had with Williams as part of her investigation. Cornell testified, over defense counsel's objection, that Williams "said he was accused of this about 12 years ago, and that the charge was taken down to a misdemeanor assault." During a subsequent conversation with Williams, Cornell testified that she asked Williams "if he would mind telling me about the allegation from 12 years ago with the other boy, and [he] did not want to tell me about that." Cornell testified Williams denied any sexual activity occurred with J.H. and did not know why the boy would make such an allegation.

* * *

Williams called Terrance Gaither, an assistant swim coach at A.B.'s high school, to testify. Gaither testified he was an assistant swim coach when A.B. was on the swim team. He stated that after the swim meet in Perry, the team immediately left to go back to their school. He and Williams drove some students home and then went out to clubs in the Flats district of Cleveland. He stated that Williams was well-liked and no other students ever made any allegations against him.

Antoine Abrams testified that he was a former student of Williams. He grew up with the Williams family, Williams was a father figure to him, and Williams helped ensure that other neighborhood children stayed out of trouble. Abrams testified that Williams was a selfless role model and helped the Abrams family pay for field trips.

Robert Moss testified that he sang in the men's choir with J.H. and Williams. Moss believed J.H. was a troubled teenager.

Charles Bell testified that he knew Williams for 23 years and cut his hair. Williams took J.H. to Bell's home for haircuts on three or four occasions. Regina Williams testified that she was married to Williams, who often mentored troubled boys. She stated that she was often at home during the time-frame of the alleged abuse. She testified on cross-examination that she did not trust J.H. but did not believe that J.H. was a "bad kid."

*Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1203, at ¶ 7-27.

{¶9} We are now called to consider the remaining assignments of error:

[II.] Appellant was denied his federal and state due process rights to notice because he was tried for offenses not contained in the indictment and the indictment did not charge him with sufficient specificity.

[IV.] The verdict was against the manifest weight of the evidence.

[V.] The court abused its discretion and committed cumulative errors that violated appellant's constitutional rights to a fair trial and due process.

[VI.] Appellant was denied his constitutional right as guaranteed by the United States and Ohio Constitutions to effective assistance of counsel

when his attorney failed to timely object to hearsay testimony and failed to move for a mistrial.

[VII.] The prosecutorial misconduct prejudicially affected appellant's constitutional right to a fair trial.[1]

### III.   Law and Analysis

#### A.   Indictment

{¶10} In the second assignment of error, Williams argued that he was tried for offenses that were not listed in the indictment and the indictment did not charge him with sufficient specificity.

{¶11} The original 61-count indictment alleged that the sexual acts occurred between November 1, 2008, and April 30, 2009.   At trial, J.H. testified that some of the sexual acts occurred in September and October 2008.   Over defense counsel's objection, the trial court amended the dates of the indictment to reflect J.H.'s testimony.   Williams now claims that the trial court's amendment of the indictment meant that he was tried for offenses that were never presented to the grand jury.   We disagree.

{¶12} This court has held that "specificity as to the time and date of an offense is not required in an indictment." *State v. Bogan*, 8th Dist. Cuyahoga No. 84468, 2005-Ohio-3412, ¶ 10, citing *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632.   Pursuant to R.C. 2941.03, "'an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time

---

[1]The seventh assignment of error is not listed in the appellant's table of contents as required by App.R. 12, but does appear in the body of the brief.   We will briefly address it.

prior to the time of filing of the indictment.'" *Bogan* at *id*. quoting *Shafer* at ¶ 17-18. An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly; the state's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged. *Bogan* at *id.*

{¶13} This is especially the case where the victim is a child victim of repeated sexual assault, as was the victim in this case:

> [W]here such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time.

(Citation omitted.) *State v. Yaacov*, 8th Dist. Cuyahoga No. 86674, 2006-Ohio-5321, ¶ 17. Simply put, when dealing with the memory of a child, reasonable allowances for inexact dates and times must be made. *State v. Barnecut*, 44 Ohio App.3d 149, 152, 542 N.E.2d 353 (5th Dist.1988).

{¶14} In addition, Crim.R. 7(D) provides that a trial court may amend an indictment any time before, during, or after a trial to correct "any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change

is made in the name or identity of the crime charged." When amendments are permitted, a criminal defendant is entitled to a discharge of the jury and a reasonable continuance under Crim.R. 7(D) only if (1) the amendment is to the substance of the indictment, and (2) the amendment prejudices the defense.

**{¶15}** Here, Williams has not been able to show that he was prejudiced by either the lack of specificity in the indictment or the amendment to the indictment. Williams outright denied any sexual contact with J.H. Therefore, amending the indictment to include conduct that occurred in September and October 2008 cannot be said to have improperly prejudiced him. Moreover, the trial court did allow a continuance for defense counsel to investigate the date change.

**{¶16}** In light of the above, we conclude that the indictment properly apprised Williams of the charged offenses and amending the indictment to conform to the evidence did not result in prejudice to Williams.

**{¶17}** The second assignment of error is overruled.

B. Manifest Weight of the Evidence

**{¶18}** In the fourth assignment of error, Williams claimed that the jury's verdict was against the manifest weight of the evidence.

**{¶19}** In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

> A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial.

*Id.* at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387. "Special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." *Id.* at 390 (Cook, J., concurring). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶20} Williams cites the following to demonstrate that his convictions were against the manifest weight of the evidence: (1) J.H.'s testimony was not credible because he had a significant history of psychological problems; (2) there was no medical evidence to support J.H.'s allegations; and (3) there were inconsistencies between J.H.'s trial testimony and the statements he provided to witnesses about how long the abuse lasted.

{¶21} After reviewing the transcript, there is nothing so incredible about the minor inconsistencies in J.H.'s testimony that lead us to find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶22} J.H. met Williams at church and began a friendship with him, whom he viewed as a father figure. Williams and J.H. spent a considerable amount of time

together, with Williams purchasing many presents for the youth, including a watch, video games, clothes, shoes, a guitar and guitar lessons. Williams also gave J.H. money to do jobs around his house.

{¶23} J.H. testified that the molestation began in September 2008, when he was 14-years old and continued up until a few weeks before he reported the abuse. Williams claims that J.H.'s testimony was not to be believed because he had a significant psychological history. But, although an appellate court does consider the credibility of the witnesses in addressing a manifest weight of the evidence argument, we are guided by the presumption that the trier of fact, "'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Ross*, 8th Dist. Cuyahoga No. 98763, 2013-Ohio-3130, ¶ 30, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, the reviewing court affords great deference to the trier of fact's determination of witness credibility. *Ross* at ¶ 31, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶24} Here, the jury was in the best position to weigh J.H.'s credibility. The jury was able to hear testimony about J.H.'s various psychological issues and records from his April 2008 stay at a local hospital for mental issues that were admitted into evidence.

{¶25} Williams claims that medical personnel found no evidence of trauma, but we note that no medical personnel testified during trial and the medical records stated only that there was "no gross bruising, bleeding, or swelling" in the anogential region. If the

last incident of abuse occurred "a few weeks" before the medical exam, one might expect that the person performing the exam would not find bruising, bleeding, or swelling around the anus. Moreover, "'sexual conduct' does not require proof of trauma." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46, quoting *State v. Barnes*, 1st Dist. Hamilton Nos. C-790595, C-790622, and C-790636, 1980 Ohio App. LEXIS 10250, at *19 (Oct. 22, 1980).

**{¶26}** Finally any inconsistencies in J.H.'s trial testimony about the dates the sexual acts occurred were minor. J.H. was a troubled young teen who was befriended by someone at his church that he "completely trusted," and whom, the evidence showed, used that trust to groom J.H. so he could repeatedly sexually abuse him.

**{¶27}** Therefore, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

**{¶28}** The fourth assignment of error is overruled.

C. Ineffective Assistance of Counsel

**{¶29}** In the sixth assignment of error, Williams argued that he was not afforded effective assistance of counsel when his attorney did not object to hearsay evidence or move for a mistrial.

**{¶30}** To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14,

2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶31} In evaluating a claim of ineffective assistance of counsel, a reviewing court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶32} Williams claims his counsel was ineffective for failing to object when (1) a police officer read J.H.'s statement into evidence, (2) J.H.'s mother testified that she saw on the internet that Williams had a prior criminal offense, and (3) the state questioned J.H.'s mother about the victim's sexual orientation.

{¶33} We have reviewed Williams's claims and do not find that they rise to the level of ineffective assistance of counsel. Even taken together, counsel's decision not to object could have been trial strategy; one we will not second-guess.

{¶34} The sixth assignment of error is overruled.

D. Prosecutorial Misconduct

{¶35} In the seventh assignment of error, Williams argues that the prosecutor

intentionally engaged in unacceptable trial tactics.

{¶36} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced a defendant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶37} Williams contends that the prosecutor unacceptably allowed a witness to testify that Williams admitted he had previously been accused of molesting A.B. and convicted of a misdemeanor and impermissibly questioned the victim's mother about his sexual orientation and whether it could be "a result of the relationship" with Williams.

{¶38} Based on these two claims, we cannot see how the prosecutor's line of questioning deprived Williams of a fair trial, especially considering the entire record. The Ohio Supreme Court ruled that A.B.'s testimony that Williams molested him was admissible under Evid.R. 404(B) and although we fail to see how the prosecutor's questions regarding J.H.'s sexual orientation are relevant, we cannot say that they impacted the fairness of his trial.

{¶39} The seventh assignment of error is overruled.

E. Cumulative Error

**{¶40}** In the fifth assignment of error, Williams argued that the trial court's cumulative errors deprived him of his right to a fair trial, specifically the trial court's decision to allow in the Evid.R. 404(B) testimony and allow inquiry into J.H.'s sexual orientation.

**{¶41}** Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48. Because the Ohio Supreme Court and this court have found Williams's arguments with regard to his other assignments of error meritless, the cumulative error doctrine does not apply in this case.

**{¶42}** Therefore, the fifth assignment of error is overruled.

**{¶43}** Judgment affirmed. The case is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR