[Cite as *State v. Gibson*, 2016-Ohio-7778.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103958**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MYRON GIBSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598230-A

**BEFORE:** Stewart, J., Jones, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 17, 2016

**ATTORNEY FOR APPELLANT**

Myron P. Watson
614 West Superior Avenue, Suite 1144
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Andrew J. Santoli
Zachary M. Humphrey
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} A jury found defendant-appellant Myron Gibson guilty of two counts of rape, two counts of gross sexual imposition, and two counts of kidnapping in connection with sexual assaults he committed against his nephews, D.G. and J.H., both of whom were under ten years of age. The offenses occurred at their father's house (the father is Gibson's brother), and consisted of Gibson touching their penises and buttocks, and digitally penetrating the anus of the boys.

{¶2} In this appeal from the judgment of conviction, Gibson's nine assignments of error challenge rulings on trial testimony, the amendment of the indictment to conform to the evidence, and the weight of the evidence supporting the convictions. We find no error and affirm.

## I. Evidence

{¶3} We first consider Gibson's eighth and ninth assignments of error relating to the weight of the evidence (one addresses the claims made by J.H.; the other addresses the claims made by D.G.) because the factual background necessary to discuss those claimed errors will facilitate review of the claimed trial errors. We address these assignments of error collectively because they rely on the same facts.

{¶4} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact, *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus, and the trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). For this reason, it is only the "rare" case in which the trier of fact's verdict will be overturned as being against the manifest weight of the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶5} At the time the crimes were committed, Gibson lived with his brother (the boys' father). After both victims spent the night with their father, D.G.'s mother picked up D.G. and brought him home. D.G. told his mother that J.H. had been playing with D.G.'s penis. D.G.'s mother called the brother and said that he needed to have a talk with the boys.

{¶6} A "day or two" later, as D.G.'s mother was bathing him (D.G. was six years old at the time), the child froze up and did not want his mother to touch him. Thinking something was wrong, D.G.'s mother checked the child and discovered that his anal opening was enlarged and "very red." D.G. told his mother that "his uncle was taking his fingers, sticking it in and out of his butt." She took the child to the hospital where

D.G. told the treating physician that his uncle not only put a finger in his anus, but "he put it in and out, in and out, in and out" while in bed, describing the act by using his finger and moving it back and forth several times. Although the physician did not find any physical injuries on D.G., she testified that it is "completely normal" for children who are victims of sexual abuse to have no physical indications of trauma because "children heal very quickly."

{¶7} J.H.'s mother testified that she spoke to D.G.'s mother and learned that the boys were touching each other. J.H. had confirmed this to his mother and additionally disclosed that Gibson had inappropriately touched his penis. D.G. testified at trial that Gibson touched his penis and anus and that he saw Gibson touching J.H.'s penis.

{¶8} A police detective assigned to investigate the allegations made by the children testified that he spoke to D.G. shortly after D.G. had been examined at the hospital. He said that D.G. disclosed sexual abuse consistent with the initial police reports prepared at the hospital. When the detective interviewed J.H. a few days later, J.H. admitted to touching D.G., but did not say that he had been sexually abused by Gibson. Two years later, the detective learned that J.H. had admitted to his mother that he had been sexually abused by Gibson. The detective confirmed the abuse in a second interview with J.H., although he described J.H. as being very reluctant to say anything.

{¶9} Gibson makes a very limited argument about the weight of the evidence: he claims that his brother's apartment was so small, and the brother's bedroom so close in

proximity to the living room where the assaults allegedly occurred, that no ordinary jury would have believed that the assaults could have occurred in the manner described.

{¶10} For us to weigh the credibility of the state's evidence, there must be something to weigh it against. *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 117. Gibson's brother did not testify, so Gibson failed to show that his brother would have been in a position to know if anything untoward was occurring. We have nothing from Gibson to weigh against the state's evidence. Gibson asks us to find the children's version of events inherently incredible, but all Gibson does is raise speculation as to whether acts of abuse could occur without his brother knowing about it. The jury could find it plausible that Gibson acted as charged, particularly when one child testified despite saying that threats were made against him. In addition, there was testimony that D.G. was suffering from post-traumatic stress syndrome related to sexual abuse and that J.H. experienced behavioral issues around the same time frame the crimes were committed — this evidence could well have persuaded the jury that the children were victims of sexual assault. This evidence, coupled with the lack of any argument pointing to contrary evidence, causes us to conclude that the jury did not lose its way by finding Gibson guilty.

## II. Evidentiary Rulings

{¶11} Gibson's first assignment of error is that the court abused its discretion by allowing testimony from J.H. that Gibson's brother threatened J.H. if he testified against

Gibson. Gibson maintains that the state used this testimony to prove Gibson's consciousness of guilt, even though he had nothing to do with his brother's conduct.

{¶12} J.H. became reluctant to answer questions about a conversation he had with his father ten weeks prior to trial. At sidebar, J.H. told the court that his father hit him, saying that if "I tell on my uncle, he was going to hit me." The court told J.H. that it would do everything it could to make sure that J.H. would be okay, but that J.H. had to answer questions "as best you can[.]" When questioning resumed, J.H. testified that his father did not say anything about J.H. testifying in court. The court conducted another sidebar discussion, asking J.H. if he might be less nervous testifying on another day. J.H. said that "I want to get it over with." When questioning resumed a second time, J.H. testified that his father told him that "[m]y uncle get out of jail after I'm 15." He also testified that his father told him "[i]f I told on my uncle, he'll whoop me." J.H. said that he had been "whooped" before with a belt just three days prior to his trial testimony.

{¶13} Gibson did not object to this testimony, so he has forfeited any claim of error on appeal. *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588 , ¶ 136. In addition, Gibson does not argue that the court committed plain error, nor can he claim ineffective assistance of counsel because he has been represented by the same attorney at both trial and in this appeal. *State v. Lentz*, 70 Ohio St.3d 527, 529-530, 639 N.E.2d 784 (1994) (counsel cannot realistically be expected to argue his own incompetence).

{¶14} Even if Gibson had objected, it would have been futile. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Credibility and bias may be questioned on cross-examination by establishing the presence of intimidation or fear resulting from threats against the witness." *State v. Hager*, 10th Dist. Franklin No. 93AP-260, 1994 Ohio App. LEXIS 629, *12 (Feb. 8, 1994), citing *State v. Black*, 54 Ohio St.2d 304, 309, 376 N.E.2d 948 (1978). This rule applies equally to third-party intimidation that renders a witness reluctant to testify because it is admissible as relevant to the witness's credibility. *See People v. Mendoza*, 52 Cal.4th 1056, 132 Cal.Rptr.3d 808, 263 P.3d 1 (2011) ("[e]vidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible."); *Commonwealth v. Whitfield*, 275 Pa. Super. 530, 419 A.2d 27, 29 (Pa.Super. 1980).

{¶15} In a related argument, Gibson's second assignment of error complains that the state improperly asked a police detective whether J.H. disclosed any threats during his interview. Gibson objected before the detective could answer. Following a sidebar conference, the court sustained the objection and instructed the jury to disregard the question. A jury is presumed to follow the court's cautionary instructions. *State v. Brooks*, 8th Dist. Cuyahoga No. 92389, 2009-Ohio-5559, ¶ 11, citing *State v. Jones*, 91 Ohio St.3d 335, 344, 2001-Ohio-57, 744 N.E.2d 1163.

**{¶16}** Gibson argues that the cautionary instruction did not render the error "harmless," but this argument misapprehends the import of a cautionary instruction — because jurors are presumed to follow the court's cautionary instruction (in this case to disregard the *question*), there is no error. If error did not occur, any discussion of harm is moot.

**{¶17}** It is the defendant's obligation to overcome the presumption that the jury followed the court's instruction. *See Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), fn. 8 (courts generally presume that a jury follows instructions to disregard evidence unless there is an "overwhelming probability" that the jury will be unable to follow the instruction and a strong likelihood that the evidence would be "devastating" to the defendant). Gibson does not overcome the presumption in this case: that same subject was addressed by J.H. in testimony occurring prior to the detective's testimony. So even if the detective had been allowed to answer the question, and his answer was that J.H. did say that he had been threatened, his testimony would have been cumulative.

**{¶18}** The third assignment of error is that the court erred by allowing the state to ask D.G.'s mother leading questions on direct examination in an effort to have her testify that Gibson's brother was indifferent to the welfare of the child. The question — whether the brother did "anything to show that he was concerned for the health or well-being of his son" — was answered in the negative by the mother before the court could overrule the objection.

{¶19} A "leading" question is one that suggests what the answer should be or contains facts that in the circumstances can and should originate with the witness. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness'[s] testimony." Evid.R. 611(C).

{¶20} The state does not dispute that its question to D.G.'s mother was leading; instead, it argues that the court's error in allowing D.G.'s mother to answer the question was harmless. We agree that the question was improperly leading (its relevancy, too, was dubious). However, it is difficult to conclude that the jury took the brother's alleged indifference to his child's welfare as evidence of Gibson's guilt. The brother was not charged as a perpetrator or an aider and abettor, nor was his conduct in any way attributed to Gibson. We see no possibility that the outcome of the trial would have been different had the leading question not been asked.

{¶21} During his cross-examination of D.G.'s mother, Gibson asked whether she had been the subject of complaints that she had abused D.G. She replied, "Correct." The court sustained the state's objection that the question was irrelevant. Gibson's fourth assignment of error complains that the court abused its discretion by not permitting him to question D.G.'s mother on the theory that she unduly influenced D.G.'s testimony because her past abuse coerced him to stand firm on the accusation that he had been sexually assaulted.

{¶22} "The accused bears the burden of proof to demonstrate plain error on the record * * *." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶

22, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. The trial transcript fails to show error, or even that the court overruled Gibson's objection. Following the question and the mother's affirmative answer that she had been investigated on complaints of abuse, the parties met at sidebar. When the questioning resumed, the court made no ruling on the objection. Questioning resumed with defense counsel pursuing a different line of questioning. The court reporter did not record the sidebar conference, so we have no way of knowing what ruling, if any, the court made with respect to the state's objection. We must presume regularity. *Cleveland v. Kutash*, 8th Dist. Cuyahoga No. 99509, 2013-Ohio-5124, ¶ 15.

{¶23} For his sixth assignment of error, Gibson complains that the state improperly insinuated through the detective's testimony that the brother was supporting Gibson instead of his own children. We summarily overrule this assignment of error because the court not only sustained Gibson's objection to the detective's testimony, but instructed the jury to disregard both the question and the detective's answer. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 162 ("An appellant cannot predicate error on objections the trial court sustained.").

{¶24} Additionally, we note that despite the court having sustained Gibson's objection to the detective's testimony, Gibson pursued that same line of questioning during the detective's cross-examination. Referencing the state's question about where the brother's allegiances lie, defense counsel asked the detective if the brother aligned himself with Gibson or the children. The detective agreed that when he interviewed the

brother, the brother said something along the lines of how "the chips can fall where they may" and that the brother did not believe that Gibson could commit sexual assault. Importantly, the detective agreed that the brother did not "put his children down" during the interview. So the court not only prohibited the state from offering testimony to show that the brother was "standing up for" Gibson, Gibson was able to elicit testimony from a police detective that the brother did not disparage his own children in an effort to protect Gibson and that the brother was conflicted by the allegations against Gibson. Not only was there no error, the testimony on this subject tended to favor Gibson.

{¶25} We likewise overrule Gibson's seventh assignment of error complaining that the court erred by allowing the detective to give his opinion that J.H. had been molested because the court sustained Gibson's objection to the detective's answer. *Hale, supra*.

### III. Trial Error

{¶26} The fifth assignment of error complains that the court erred by allowing the state to amend the dates listed in the indictment. As relevant to this appeal, Count 9 (kidnapping), applicable to victim John Doe 2 (J.H.), stated a date for the offense as "on or about July 20, 2013." Over objection, the court granted the state's motion to amend that count to state a date for the offense as "On or about May 1, 2013 to July 20, 2013," a date range consistent with Counts 1-6 relating to victim John Doe 1 (D.G.). Gibson argues that the amendment wrongly enlarged the date range for Count 9 for the sole purpose of conforming to the other counts (the court also amended Count 8, but granted a Crim.R. 29(A) judgment of acquittal on that count).

**{¶27}** If the precise date and time are not essential elements of a criminal offense, an indictment need not allege a specific date of the offense. *State v. Sellards*, 17 Ohio St.3d 169, 171-172, 478 N.E.2d 781 (1985). Hence,

> [t]he court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

Crim.R. 7(D).

**{¶28}** This court has held that "specificity as to the time and date of an offense is not required in an indictment." *State v. Bogan*, 8th Dist. Cuyahoga No. 84468, 2005-Ohio-3412, ¶ 10, citing *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632. And when the indictment charges offenses against children, we recognize that "when dealing with the memory of a child, reasonable allowances for inexact dates and times must be made." *State v. Williams*, 8th Dist. Cuyahoga No. 94965, 2013-Ohio-4471, ¶ 13, citing *State v. Barnecut*, 44 Ohio App.3d 149, 152, 542 N.E.2d 353 (5th Dist.1988). We review motions to amend indictments for an abuse of discretion. *State v. Moore*, 8th Dist. Cuyahoga No. 103123, 2016-Ohio-2836, ¶ 29.

**{¶29}** Gibson makes no argument that the date was an essential element of the offenses, nor does he argue that the amendment changed the name or identify of the crime charged. Gibson knew before trial that the offenses against both victims were committed during the same time frame, so he has no viable argument that the amendment prejudiced his ability to defend the charges. The court recognized that the offenses were committed

during the same time and found that the date stated for Count 9 was likely an "oversight." This was not an abuse of the court's discretion.

{¶30} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

LARRY A. JONES, SR., A.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., CONCURRING IN JUDGMENT ONLY:

{¶31} I concur with the judgment of the majority, but I write separately to express my concern regarding the admission of J.H.'s testimony that his father threatened him if he testified against Gibson. J.H. was reluctant to testify about a conversation with his father. He testified that his father told him "[m]y uncle get out of jail after I'm 15." J.H. also testified that his father told him "[i]f I told on my uncle, he'll whoop me." J.H. stated that he had been "whooped" before with a belt three days prior to trial.

**{¶32}** I find this testimony troublesome as it tends to prove Gibson's consciousness of guilt through the acts of his brother. Despite the troublesome nature of J.H.'s testimony, our review on appeal is limited to a plain error analysis because Gibson did not object.

**{¶33}** This court has previously held that "'[a]ttempts by persons other than the accused to suppress evidence is admissible against the accused *where the accused is connected to such attempts.*'" (Emphasis added.) *State v. Colegrove*, 8th Dist. Cuyahoga No. 102173, 2015-Ohio-3476, ¶ 21, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 89461, 2008-Ohio-1948, ¶ 25. In *Colegrove*, the appellant made jailhouse phone calls where he asked others to attempt to influence the testimony of victims in his criminal case. *Id.* at ¶ 21. This court found that the acts committed by appellant's brother or other family members to suppress witness testimony were admissible against appellant, noting that evidence of threats or intimidation of witnesses reflect a consciousness of guilt and are admissible. *Id.* at ¶ 20-21, citing *State v. Soke*, 105 Ohio App.3d 226, 663 N.E.2d 986 (8th Dist.1995).

**{¶34}** In the instant case, however, Gibson (the accused) was not connected to his brother's acts. A review of the record reveals no evidence that Gibson engaged in any acts meant to suppress J.H.'s testimony, nor did he solicit his brother to do the same. This distinction is critical in cases such as this one, where there is no physical evidence and state's evidence is solely circumstantial. Thus, I would find that the probative value

of this evidence does not substantially outweigh the danger of unfair prejudice to Gibson because he is not in anyway connected to the attempts made to influence J.H.

{¶35} While I am compelled to find this evidence inadmissible, I agree with the majority's conclusion that, absent this testimony, the case would not have been decided differently.   As a result, I would affirm the trial court's judgment.